IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LONNIE C. WARREN, JR., | * |
| Plaintiff, | * |
| vs. | * Civil Action No. ADC-17-627 |
| NANCY A. BERRYHILL,<br>Acting Commissioner,<br>Social Security Administration, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## AMENDED MEMORANDUM OPINION

On March 6, 2017, Lonnie C. Warren, Jr. ("Plaintiff") petitioned this court to review the Social Security Administration's ("SSA") final decision to deny his claim for Supplemental Security Income ("SSI"). *See* ECF No. 1 (the "Complaint"). After consideration of the Complaint, the parties' cross-motions for summary judgment (ECF Nos. 17–18), and the response thereto (ECF No. 19), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2016). In addition, for the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 17) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 18) is DENIED, and the decision of the SSA is REMANDED for proceedings consistent with this opinion.

### PROCEDURAL HISTORY

On August 29, 2014, Plaintiff filed a Title XVI application for SSI alleging disability beginning on November 15, 1970. His claims were denied initially and upon reconsideration on November 19, 2014 and February 23, 2015, respectively. Subsequently, on April 16, 2015, Plaintiff filed a written request for a hearing and, on September 13, 2016, a hearing was held

1

before an Administrative Law Judge ("ALJ"). On November 16, 2016, the ALJ rendered a decision ruling that Plaintiff "ha[d] not been under a disability within the meaning of the Social Security Act [("the Act")] since August 29, 2014, the date the application was filed."[1] ECF No. 11 at 25. Thereafter, Plaintiff filed an appeal of the ALJ's disability determination and, on January 18, 2017, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481 (2017); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On March 6, 2017, Plaintiff filed the Complaint in this Court seeking judicial review of the Commissioner's denial of Plaintiff's disability application.[2] Plaintiff filed a Motion for Summary Judgment on November 20, 2017 and Defendant filed a Motion for Summary Judgment on December 13, 2017. Plaintiff responded to Defendant's Motion for Summary Judgment on January 17, 2018. This matter is now fully briefed and the Court has reviewed Plaintiff's Motion for Summary Judgement and Defendant's Motion for Summary Judgment, including the response thereto.

## STANDARD OF REVIEW

"This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the

---

[1] The ALJ determined that the appropriate period for this claim began on August 29, 2014 because the October 20, 2010 judgment denying Plaintiff disability was "*res judicata* and should not be disturbed." ECF No. 11 at 24.

[2] On January 29, 2018, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

2

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("Under the [Act], [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." (citations omitted)).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith*, 99 F.3d at 638. "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Johnson*, 434 F.3d at 653 (internal citations omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight

accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for SSI, a claimant must establish that she is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be determined to be under disability where "[her] physical or mental impairment or impairments are of such a severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the Commissioner, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's RFC, which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (*e.g.*, allegations of pain) using a two-part test. *Craig*, 76 F.3d at 594; 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R.

§ 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. *Id.* § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. *Id.* § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *1–12 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as the claimant's ability to perform daily activities, activities that precipitate or aggravate the symptoms, medications and treatments used, and other methods used to alleviate the symptoms. *Id.* at *6.

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv), 416.920(e).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. *Id.* §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant numbers in the

national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## ALJ DETERMINATION

In the instant matter, the ALJ performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity since August 29, 2014, the application date. ECF No. 11 at 26. At step two, the ALJ found that Plaintiff had the severe impairments of osteoarthritis of the left knee, pes planus deformity of the right foot, status post clubfoot reconstructive surgery, and degenerative disc disease of the spine. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 27. Before proceeding to step four, the ALJ determined that Plaintiff had the RFC "to perform the full range of sedentary work as defined in 20 CFR 416.967(a). *Id.* At step four, the ALJ then determined that Plaintiff had no past relevant work. *Id.* at 30. Finally, at step five, the ALJ found that "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." *Id.* Accordingly, the ALJ concluded that Plaintiff "ha[d] not been under a disability, as defined in [the Act], since August 29, 2014, the date the application was filed." *Id.* at 31.

## DISCUSSION

Plaintiff argues that the ALJ's decision is not supported by substantial evidence on the record as a whole and raises three specific allegations of error on appeal: (1) that the ALJ failed to consider Plaintiff's medical impairments under Listing 1.02A; (2) that the ALJ's RFC determination was not supported by substantial evidence; and (3) that the ALJ improperly

addressed Plaintiff's non-exertional limitations. Each of Plaintiff's arguments is addressed below.

## A. The ALJ Did Not Err By Determining That Plaintiff Does Not Meet Listing 1.02A.

At step three of the sequential evaluation, the ALJ must determine whether the claimant's impairments meet or equal one or more of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Where a claimant can show that her condition "meets or equals the listed impairments," the claimant is entitled to a conclusive presumption that she is disabled within the meaning of the Act. *Bowen v. City of New York*, 476 U.S. 467, 471 (1986); *see McNunis v. Califano*, 605 F.2d 743, 744 (4th Cir. 1979) (stating that the listings, if met, are "conclusive on the issue of disability"). The burden of proof is on the claimant to show that she meets *all* of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

"In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F.Supp.2d 384, 390 (D.Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). However, "[u]nder *Cook*, the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F.Supp.2d 629, 645 (D.Md. 1999). "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment." *Id.*

Here, Plaintiff argues that the ALJ should have evaluated his medical impairments under Listing 1.02A. ECF No. 17-1 at 9. Listing 1.02A states:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.][3]

20 C.F.R. pt. 404, subpt. P, app. 1, 1.02A. In his decision, the ALJ merely concluded that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." ECF No. 11 at 27.

---

[3] Listing 1.00(B)(2)(b) defines an inability to ambulate effectively as follows:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Plaintiff insists that the record contains sufficient evidence to support a determination that he met or equaled Listing 1.02A. ECF No. 17-1 at 9–15. Specifically, Plaintiff points to his knee and foot impairments, including osteoarthritis and subluxation of his left knee, pes planus deformity in his left foot, and joint pain and stiffness affecting his motion, and claims that his impairments resulted in the inability to ambulate effectively. *Id.* Defendant argues that the record does not contain "ample" evidence that Plaintiff meets or equals Listing 1.02A. The Court has carefully reviewed the record and agrees with Defendant.

The fact that the ALJ did not identify or evaluate any listings does not alone constitute error because under existing Fourth Circuit law, an ALJ only has to identify a listing and compare the evidence to the listing requirements where there is ample evidence to suggest that the listing is met. *Castanuela v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-3456, 2017 WL 6997932, at *2 (D.Md. Nov. 14, 2017). Here, there is insufficient evidence that Plaintiff meets the requirements of Listing 1.02A so as to have merited consideration of that Listing by the ALJ. Specifically, there is inadequate evidence that Plaintiff could not ambulate effectively as required by Listing 1.02A. As noted in the ALJ's decision, Plaintiff "ambulated normally and had normal movement in all extremities" in May 2016 and the consultative medical examination in November 2014 revealed that Plaintiff "had a steady gait." ECF No. 11 at 29. Nothing in the record suggests that Plaintiff had an inability to ambulate effectively as defined in Listing 1.00(B)(2)(b). Because there is no factual or medical support for Listing 1.02A, the ALJ was not required to compare the medical evidence of record to the criteria of that Listing. *See Huntington*, 101 F.Supp.2d at 391–92. Accordingly, the Court finds no merit in Plaintiff's contention that the ALJ erred by failing to find that he met Listing 1.02A.

## B. The ALJ Improperly Determined Plaintiff's Credibility.

Where a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must then assess the claimant's RFC. RFC assesses "the maximum degrees to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(c).

In determining RFC specifically, an ALJ must take into account the entire record, opinion evidence, impairments that are not severe, and any limitations the ALJ finds. *Id.* § 404.1545(a) (ordering the ALJ to consider the entire record); SSR 96-8p, at *2 (defining RFC as an assessment of an individual's ability to perform vocational-related physical and mental activities). Furthermore, it is the duty of the ALJ to make findings of fact and resolve conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). If more than one impairment is present, the ALJ must consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 404.1523; *see Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them." (citation omitted)).

Social Security Ruling 96–8p provides the proper framework for evaluating a claimant's RFC. Specifically, the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the [ALJ] must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of

> each work-related activity the individual can perform based on the evidence available in the case record. The [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96–8p, at *7 (footnote omitted). Furthermore, "[t]he Ruling instructs that the [RFC] 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (footnote omitted) (quoting SSR 96-8p). "Only after that may [the RFC] be expressed in terms of the exertional levels of work[:] sedentary, light, medium, heavy, and very heavy." *Id.* (quoting SSR 96-8p).

During his step four evaluation, the ALJ determined that Plaintiff could "perform the full range of sedentary work." ECF No. 11 at 27. Relying on *Lewis v. Berryhill*, 858 F.3d 858 (4th Cir. 2017), Plaintiff challenges the ALJ's RFC determination, arguing that substantial evidence does not support the RFC determination because the ALJ's evaluation of Plaintiff's credibility is unsupported. ECF No. 17-1 at 20–21. Specifically, Plaintiff argues that the ALJ failed to identify any statements which were inconsistent with Plaintiff's alleged symptoms, failed to discuss his daily activities, and solely relied on objective evidence to find Plaintiff less than credible. *Id.* The Court agrees that the ALJ improperly evaluated Plaintiff's credibility.

The Court of Appeals for the Fourth Circuit laid out the two-step process for evaluating whether a person is disabled by pain and other symptoms under 20 C.F.R. §§ 404.1529 and 416.929:

> Under the regulations implementing the [Act], an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit

> the claimant's ability to perform basic work activities. The second
> determination requires the ALJ to assess the credibility of the
> claimant's statements about symptoms and their functional effects.

*Lewis*, 858 F.3d at 865–66 (internal citations omitted); *see also Craig*, 76 F.3d at 594 (describing the two-step process). At the second stage, the ALJ must consider all the available evidence, including the claimant's medical history, medical signs, statements by the claimant and her treating or examining physicians, objective medical evidence of pain, and any other information proffered by the claimant. 20 C.F.R. §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3).

In addition, the ALJ should consider inconsistencies in the evidence to determine whether a claimant's subjective claims regarding her pain symptoms can reasonably be accepted. *Id.* §§ 404.1529(c)(4), 416.929(c)(4). Subjective symptoms of pain, standing alone, cannot sustain a finding of disability and a claimant must substantiate her allegations of pain. *Id.* § 404.1529; *see also Mickles v. Shalala*, 29 F.3d 918, 923 (4th Cir. 1994) (stating that pain may render the claimant incapable of working independent of any physical limitation, but allegations of pain alone are insufficient to find a disability). "According to the regulations, the ALJ 'will not reject [a claimant's] statements about the intensity and persistence of [his] pain or other symptoms or about the effect [the claimant's] symptoms have on [his] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements.'" *Lewis*, 858 F.3d at 866 (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)). The ALJ, therefore, is required to make a finding regarding a claimant's credibility and should specifically refer to the evidence supporting that finding, *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (per curiam), but the ALJ cannot discount Plaintiff's subjective evidence of pain solely based on objective medical findings, *Lewis*, 858 F.3d at 866 (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)).

Regarding Plaintiff's pain, the ALJ found that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible for the reasons discussed elsewhere in this decision." ECF No. 11 at 28. In his decision, the ALJ offered a sparse explanation:

> [Plaintiff] lives in a house with his two brothers. He testified that [he] does nothing other than sit and watch television. He does not work. He can drive, but does not have a car. He has pain in both knees, feet and lower back.
>
> . . . .
>
> . . . [S]ubsequent records show [Plaintiff] suffers from chronic left ankle and foot pain, as well as pain and swelling of the left knee that appear to have worsened. Thus, the November 2014 examination results and findings are superseded by the objective testing, examination results, and emergency room visits, showing [Plaintiff] is more limited. The undersigned finds the sedentary exertional limits described above supported by the later records in evidence.
>
> . . . .
>
> The undersigned considered [Plaintiff]'s correspondence in making this finding and gave it minimal weight, as it is self-serving and does not provide medical documentation to support his conclusions. (E10E and E15E).

*Id.* at 28–30. The ALJ also discussed that Plaintiff has not sought medical treatment for his scoliosis. *Id.* at 28.

According to *Lewis*, Plaintiff's subjective evidence of pain intensity cannot be discounted solely based on objective medical findings. 858 F.3d at 866. Just as in *Lewis*, the ALJ here failed to explain in his decision what statements by Plaintiff undercut his subjective evidence of pain intensity as limiting his functional capacity. *See id.*; *see Radford*, 734 F.3d at 295 ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the

14

ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence."); *see also* SSR 96-8p, at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."). The ALJ offered no permissible evidence to contradict Plaintiff's subjective claims regarding her pain and its impact on her ability to work. Therefore, by improperly relying on impermissible objective medical evidence and failing to offer relevant subjective evidence to find that Plaintiff was not credible, the ALJ erred and the Court remands to the ALJ to explain his reasoning for discounting Plaintiff's claims of pain.

### C. The ALJ Properly Addressed Plaintiff's Non-Exertional Limitations.

Lastly, Plaintiff contends that the ALJ erred during his step five analysis by failing to address Plaintiff's non-exertional limitations. ECF No. 17-1 at 17. Specifically, Plaintiff finds error because the ALJ improperly considered Plaintiff's non-exertional limitations, including that Plaintiff was prescribed "ice, rest, and elevation" for his knee with no longer than 20 minutes of use per hour and alleged difficulties kneeling. *Id.* at 18–20. The Court disagrees.

Exertional or strength-related restrictions on work activities limit the functions of walking, standing, sitting, lifting, carrying, pushing, and pulling. 20 C.F.R. §§ 404.1567, 404.1569a(b), 416.967, 416.969a(b). Non-exertional restrictions on functioning are those that are not strength-related and tend to stay constant regardless of whether the claimant is exerting himself, (i.e., they are not exacerbated by exertion). *Id.* §§ 404.1545(d), 416.945(d); *Id.* Pt. 404, Subpt. P, App. 2, § 200.00(e). Non-exertional restrictions include limitations that are sensory (visual, auditory, tactile); postural (stooping, climbing, kneeling, crouching, balancing,

crawling); manipulative (fine/gross dexterity, reaching); environmental (restrictions from dust, gas, heat, cold, moisture, allergens, mold, chemicals, heights, or dangerous machinery in the work environment); and mental (cognitive or psychiatric restrictions). *Id.* §§ 404.1569a(c)(i)–(iv), 416.969a(c)(i)–(iv). While case law and even agency regulations often use "impairment" terminology and the terms "impairment" and "limitation" interchangeably in reference to non-exertional restrictions, agency guidance clarifies that "[m]edical impairments and symptoms, including pain, are not intrinsically exertional or nonexertional. It is the functional limitations or restrictions caused by medical impairments and their related symptoms that are categorized as exertional or nonexertional." SSR 96-8p, at *1.

Where the claimant suffers from both exertional and non-exertional impairments, the ALJ may not apply the Medical-Vocational Guidelines or "grids." 20 C.F.R. § 404.1569a(d); *see Wooldridge v. Bowen*, 816 F.2d 157, 161 (4th Cir. 1987). The Fourth Circuit has found that while "not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids[, t]he proper inquiry . . . is whether the nonexertional condition affects an individual's [RFC] to perform work of which he is exertionally capable." *Walker*, 889 F.2d at 49 (internal citation omitted). Where a non-exertional impairment affects the RFC, the ALJ is required to employ the use of a vocational expert ("VE") to determine whether the claimant is still capable of some work. 20 C.F.R. § 404.1560. "If the claimant is not capable, disability will be found." *Chapman v. Astrue*, No. PWG-10-304, 2011 WL 1135866, at *2 (D.Md. Mar. 24, 2011). However, "[i]f Plaintiff's nonexertional limitations have a minimal effect on his exertional occupational base, then a finding directed by the Grids is sufficient, and testimony by a VE is unnecessary." *Shaw v.*

*Comm'r, Soc. Sec. Admin.*, No. SAG-12-1686, 2013 WL 3147174, at *2 (D.Md. June 17, 2013) (citation omitted).

Here, there was substantial evidence from which the ALJ could properly find that Plaintiff had no limitations, let alone any limitations significant enough to prevent a wide range of gainful employment in work at the sedentary level. First, regarding Plaintiff's prescription to ice, rest, and elevate his left knee, the ALJ gave "some weight" to this limitation for January 2016 because nothing indicated that the limitation was more than temporary. ECF No. 11 at 28–29. Additionally, the consultative medical examiner stated that Plaintiff exhibited no difficulty getting on or off the table or rising from a squat to a standing position. *Id.* at 29. The ALJ determined that Plaintiff's alleged impairments did not justify non-exertional limitations, and Plaintiff has not explained why the limitation of sedentary work is inadequate to accommodate any difficulty he has kneeling or using his knee. *See Burger v. Comm'r, Soc. Sec. Admin.*, No. SAG-14-1345, 2015 WL 467662, at *3 (D.Md. Feb. 2, 2015). Regardless, even if the ALJ had recognized some kneeling limitation, a limitation to occasional kneeling does not have a material effect on the occupational base because kneeling, like crawling, "is a relatively rare activity" and as such, limitations on kneeling are "of little significance in the broad world of work." SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985). Accordingly, the ALJ could still use the grids, and because Plaintiff's alleged non-exertional impairments did not prevent a wide range of gainful employment, the ALJ's reliance on the grids was proper.

## CONCLUSION

In summation, the Court finds that the ALJ failed to properly evaluate the evidence on record and provided insubstantial evidence in support of the finding that Plaintiff was not credible. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is

REVERSED IN PART due to inadequate analysis. Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 17) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 18) is DENIED, and the decision of the SSA is REMANDED to the Commissioner for further proceedings consistent with this opinion. The Clerk is directed to CLOSE this case.

Date: 5 March 2018

A. David Copperthite
United States Magistrate Judge